FILED
2018 Mar-13 PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

SHANNON WELLS,                )
                              )
    Plaintiff                 )
                              )
vs.                           )   Case No.   4:16-cv-01496-HNJ
                              )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION,               )
                              )
    Defendant                 )

# MEMORANDUM OPINION

Plaintiff Shannon Wells seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding her claim for Disability Insurance Benefits (DIB). The undersigned has carefully considered the record, and for the reasons stated below, **AFFIRM** the Commissioner's decision.

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's

2

impairments would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii). That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if he suffers a listed impairment. *See Jones*, 190 F.3d at 1228 ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the plaintiff has the residual functional capacity ("RFC") to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to prove, considering claimant's RFC, age, education and past work experience, whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520(f)(1). If the plaintiff can perform other work, the evaluator will not find

the claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); see also 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find the claimaint disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion" *Id.* (citations omitted).

# FACTUAL AND PROCEDURAL HISTORY

After a hearing on January 2, 2015, the ALJ issued his decision on April 6, 2015. In his decision, the ALJ first determined that Ms. Wells met the Social Security Act's insured status requirements through December 31, 2018. The ALJ further found Wells has not engaged in substantial gainful activity since May 20, 2011, the alleged onset date. At step two, the ALJ found the following severe impairments: depressive disorder; anxiety disorder; anorexia nervosa; pain; disorder associated with psychological factors and general medical condition; pectus excavatum; chronic back pain; chronic chest wall pain; and restrictive lung disease due to pectus excavatum. (Tr. 41).

The ALJ concluded at step three Ms. Wells's combination of severe impairments do not meet or medically equal a listed impairment. (Tr. 41). At step four, the ALJ found Wells cannot perform her past relevant work as a stock manager and front desk worker. He ruled Wells exhibits the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), with certain limitations.[1] (Tr. 43-44). At step five, the ALJ

---

[1] The ALJ described the following limitations:

> the claimant can ambulate short distances up to 2 city blocks per instance on flat hard surfaces. She is able to frequently reach overhead as well as all other directions bilaterally. She can occasionally climb ramps and stairs but should never climb ladders or scaffolds. She can frequently balance, occasionally stoop and kneel but never crouch or crawl. She should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial motor vehicles. She can tolerate occasional exposure to humidity, wetness, and

determined Wells's age, education, work experience, and RFC allow her to perform jobs that exist in significant numbers in the local and national economy, such as order clerk, charge account clerk, and surveillance system monitor. (Tr. 50).

On August 5, 2016, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1). Ms. Wells filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

**ANALYSIS**

In this appeal, Ms. Wells contends substantial evidence does not support the ALJ's decision. She faults the ALJ for assigning only partial weight to the opinion of Wells's treating physician and not contacting Wells's treating physician for clarification; improperly assessing Wells's continuance of part-time work; and improperly applying the pain standard. After consideration of the record and Wells's contentions, the court determines substantial evidence supports the ALJ's decision.

---

vibration. She should never be exposed to extreme cold, extreme heat or concentrated dust, fumes, gases or other pulmonary irritants. She should be exposed to no more than moderate noise levels. The undersigned further finds that the claimant could only remember short simple instructions and would be unable to deal with detailed or complex instructions. She could do simple routine repetitive tasks but would be unable to do detailed or complex tasks. She is limited to simple work related decisions. She would be able to accept constructive non-confrontational criticism, work in small group settings and be able to accept changes in the work place setting if introduced gradually and infrequently and she would be unable to perform assembly line work with production rate pace but could perform other goal-oriented work. In addition to normal workday breaks, she would be off-task 5% of an 8-hour workday (non-consecutive minutes).

## A. The ALJ Assigned Proper Weight to the Treating Physician's Opinion

The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the evidence did not bolster the treating physician's opinion; (2) evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* An ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Id.* An ALJ does not commit reversible error when one, he articulates specific reasons for declining to give the treating physician's opinion controlling weight, and two, substantial evidence supports these findings. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*).

Wells contends the ALJ erred in giving only partial weight to the opinion of her treating physician, Dr. Scott Argo. After examining Wells in August 2014, Dr. Argo opined Wells's pectus excavatum was "likely the reason she is having issues at this point. She will not be able to physically work for much longer given the progression and sever pectus ex [sic]. Due to this she will not be able to maintain gainful employment very likely in the near future based on symptoms worsening." (Tr. 379). The ALJ found Dr. Argo's opinion unclear because he did not describe what was worsening and how it would render Wells unable to work. (Tr. 49).

7

The court finds good cause exists to give less than substantial or considerable weight to Dr. Argo's opinion for several reasons. First, Dr. Argo's opinion manifests as a conclusory assertion. An ALJ may discount a conclusory opinion, even from a treating physician. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Dr. Argo also phrased his opinion in terms of probability, rather than rendering any definitive conclusion as to Wells's ability to maintain gainful employment at the time he examined her.[2] "Where a treating physician expresses uncertainty as to his own medical findings, the ALJ has no obligation to defer to his opinion." *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)).

Good cause also exists in that other evidence in the record fails to support Dr. Argo's opinion. In November 2010, Wells reported some neck and back pain related to lifting at her job, for which she received pain medication. (Tr. 304). Wells did not return until October 2011, after she shifted from full to part-time employment, with complaints of lower back pain. She reported she occasionally treated the back pain with medication. At that time, Wells reported no chest pain or breathing difficulty. (Tr. 304).

---

[2] Dr. Argo rendered his opinion in August 2014. Wells still maintained part-time employment at the time of the January 2015 hearing.

8

Wells did not seek medical care again until March 2014, when she sought treatment from Dr. Argo for chest wall pain and shortness of breath. (Tr. 332-34). A spirometry test on April 11, 2014, established an FVC (forced vital capacity) of 2.06.[3] (Tr. 317). She saw a cardiologist on April 28, 2014, and reported shortness of breath and chest pain. Examination revealed normal heart rate without thrills, but a grade 3/6 holocystolic murmur. Cardiac labs registered normal. The cardiologist determined the chest pain to be non-cardiac in nature, and Wells exhibited no valvular regurgitation and an ejection fraction within normal range. (Tr. 339, 356). At a follow up visit in May 2014, Wells expressed her symptoms had resolved. (Tr. 351).

In June 2014, Wells presented to Dr. Argo with complaints of gradual, non-radiating back pain. (Tr. 358). However, she stated pain medication helped alleviate the symptoms. (Tr. 359). Wells visited Dr. Jason Ham in May 2014 and reported shortness of breath (Tr. 328), but at a visit with consulting examiner Dr. Younus Ismail in July 2014, she denied shortness of breath. (Tr. 362). Dr. Ismail noted Wells moved without difficulty, and he detected no cardiac murmur. She exhibited decreased range of motion in the lumbar spine but without tenderness and only mild discomfort. Her gait and reflexes displayed normal. Dr. Ismail diagnosed

---

[3] Under Listing 3.02 (chronic respiratory disorders), the Commissioner considers a claimant disabled if the FVC falls below a certain value. Based on Wells's height (5'9") and age at the time of the test (42), her FVC would have to fall below 1.85 to meet the listing.

9

chronic chest wall pain with some deformity over the chest wall but no other physical findings. (Tr. 363-64).

In August 2014, Wells described some chest pain and gradual back pain to Dr. Argo, but she displayed a normal gait and denied shortness of breath. (Tr. 378-79). Wells reported that medication controlled her pain, but she also admitted she did not take it as prescribed. (Tr. 69). In September 2014, Wells saw Dr. Jason Ham for a urinary tract infection, at which time she exhibited no apparent distress and reported no shortness of breath. Dr. Ham noted good air movement in Wells's lungs and no heart murmurs. (Tr. 374). The final medical record shows a visit to Dr. Argo in December 2014 for treatment of a cold. Wells denied shortness of breath and reported improvement in her pain severity and activities of daily living with pain medication. (Tr. 384-86).

In addition to the medical records' contrast with Dr. Argo, Dr. Argo's opinion that Wells would be unable to work invades the province of the ALJ and sustains no dispositive weight.

> According to 20 C.F.R. § 404.1527(d), the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner. Section (d)(2) provides that although the Commissioner will consider opinions from medical sources on issues such as the RFC and the application of vocational factors, the final responsibility for deciding those issues is reserved to the Commissioner.

*Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017). That is, "the task of determining a claimant's . . . ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

According to Social Security regulations, an ALJ should recontact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). Social Security Ruling 96-5p provides, "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." However, an ALJ bears no responsibility to recontact medical sources when the record already contains substantial evidence to support a decision. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Because the ALJ relied upon substantial evidence contradicting Dr. Argo's conclusory opinion, he maintained no duty to seek clarification from Dr. Argo.

**B. The ALJ Properly Considered Wells's Part-Time Employment**

In his opinion, the ALJ discussed Wells's part-time work as part of his analysis of Wells's credibility.[4] Wells's argument erroneously assumes that the ALJ's finding of

---

[4] Notably, the ALJ did not find the part-time work constituted "substantial gainful activity" at step one of the analysis.

capacity to perform sedentary work depends upon Wells's ability to perform part-time work, yet substantial evidence otherwise supports the ALJ's finding. Thus, the ALJ did not equate the ability to perform part-time work with the ability to perform full time work.

Rather, he considered her part-time work as indicative that Wells's reports of disabling pain contradicted other record evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the claimant's] . . . part-time work [was] inconsistent with her claim of disabling pain."); *Hagan v. Colvin*, No. 1:14–cv–00293–AKK, 2014 WL 7403952 (N.D. Ala. Dec. 30, 2014) (ALJ did not find claimant's part-time work constituted substantial gainful activity but properly considered part-time work in evaluating claimant's subjective testimony regarding pain); *c.f., Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 805-08 (11th Cir. 2013) (claimant's part-time work as hotel chain reservation specialist during pendency of social security application was evidence of ability to work despite the fact that she worked from home and employer made allowances for her health); *Clapp v. Astrue*, No. 3:06cv334/MCR/EMT, 2008 WL 275880, at *12 (N.D. Fla. Jan. 31, 2008), *report and recommendation adopted*, 2008 WL 619347 (N.D. Fla. Mar. 4, 2008) ("Although Plaintiff contends she could not work full time and her current employer made accommodations for her, her employment was nevertheless properly considered by the ALJ, as work

performed during any period in which the Plaintiff alleges that she was under a disability may demonstrate an ability to perform [substantial gainful activity].").

Consequently, the ALJ committed no error when he referenced Wells's part-time work. Therefore, the court finds that the ALJ properly characterized Wells's work history, did not find that Wells's work history was more substantial than what the record reflects, and properly considered the part-time work in weighing her credibility.

**C. The ALJ Properly Applied the Pain Standard**

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*per curiam*)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility. . . are not enough. . . ." *Foote v. Chater*, 67

13

F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*); *see* SSR 96-7p, 1996 WL 374186 at *2 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").[5] Nonetheless, credibility determinations remain within the province of the Commissioner, not the courts. *Taylor v. Comm'r of Soc. Sec.*, 213 F. App'x 778, 779 (11th Cir. 2006).

The ALJ determined Wells suffers from the severe impairments of pain, chronic back pain, and chronic chest wall pain. Therefore, the record contains evidence of an underlying medical condition. However, the ALJ also considered objective medical evidence which belied the severity of the alleged pain. In October 2011, Wells sought treatment for a cough, sore throat, and nasal congestion, and she also complained of lower back pain for which she occasionally took Tramadol. She denied chest pain or shortness of breath. (Tr. 304). Thereafter, Wells did not seek any medical treatment for her conditions until March 2014 when she saw Dr. Scott Argo for complaints of chest pain. Dr. Argo noted decreased breath sounds and arranged a cardiac consult.

---

[5] SSR 16-3p rescinded SSR 96-7p, effective March 28, 2016. However, because SSR 96-7p constituted the relevant standard at the time of the ALJ's decision, the court reviews this matter using SSR 96-7p. *See Hargress v. Soc. Sec. Admin, Comm'r*, No. 17-11683, 2018 WL 1061567, at *4-*5 (11th Cir. Feb. 27, 2018); *Wood v. Berryhill*, No. 4:15-CV-1248-LSC, 2017 WL 1196951, at *7-*9 (N.D. Ala. Mar. 31, 2017).

Dr. Samuel Ledford examined Wells on April 28, 2014. At that time, Wells reported chest pain, but denied it occurred upon exertion. Dr. Ledford detected a heart murmur and noted Wells remained "moderately exertional without chest pain symptoms." (Tr. 355). He opined the pain probably resulted from gastroesophageal reflux or esophageal spasm. (Tr. 356). Diagnostic testing revealed no significant valvular regurgitation and no acute chest disease, with a normal ejection fraction of 55%. (Tr. 339-40). At a May 30, 2014, follow up visit with Dr. Ledford, Wells reported her chest pain had completely resolved, and Dr. Ledford found no further testing warranted. (Tr. 351-52).[6] As discussed above, Wells expressed that pain medication alleviated her symptoms and improved the quality of her daily activities of living. In fact, Wells reported to consulting examiner Dr. Jon Rogers that she launched into housecleaning binges at times. (Tr. 366).

In assessing the credibility of Wells's testimony as to her pain and limitations imposed by pain, the ALJ considered record evidence discounting her representations as to the pain's intensity, persistence, and limiting effects. He noted Wells testified that when she takes her pain medication, it alleviates her symptoms. (Tr. 44, 45). He also noted her testimony that she does not take the medication as she should. (Tr. 44, 45, 47). He referenced the over-two-year treatment gap which occurred after her alleged onset date. The ALJ considered Wells's part-time employment to indicate her daily

---

[6] The court notes Wells reported chest pain to Dr. Argo on May 21, 2014. (Tr. 324).

15

activities have been greater than reported. In addition, the ALJ credited Wells's mother's function report, which differed from Wells's function report as to the extent of her daily activities. (Tr. 45-46).[7]

The ALJ also noted discrepancies in Wells's reports to examining physician Dr. Jon Rogers. (Tr. 47, 49). For example, she described anxiety and depression symptoms not documented in primary care notes, as well as problems with multiple sclerosis absent any diagnosis or history of this condition in her medical records. She also advised Dr. Rogers she had quit work due to pain, yet she actually maintained employment at that time.

The court finds that the ALJ followed the pain standard and articulated explicit and adequate reasons for finding Wells's testimony regarding the severity of her pain not entirely credible. *See Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (substantial evidence supported adverse credibility determination when medical reports showed four-year gap in treatment history, described claimant's condition as normal, and report indicated analgesic medication generally controlled any pain).

---

[7] Wells wrote in her function report that she might spend the day sitting and lying down; her husband and children do the housework; others shop for groceries and prepare meals; she needs someone to drive her; and she no longer socializes other than with her family. (Tr. 241-48). In contrast, her mother, who sees Wells on a daily basis, reported Wells cares for her husband and two children; prepares simple meals every day; does light cleaning and some laundry; drives; shops for groceries and personal items; and regularly attends church and goes to work. (Tr. 249-56).

## CONCLUSION

Based on the foregoing, the court **AFFIRMS** the ALJ's finding that Ms. Wells was not disabled within the meaning of the Social Security Act.

**DONE** this 13th day of March, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE